**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741
***Counsel for Plaintiff***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL RODRIGUEZ, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>EQUAL EXCHANGE, INC.,<br><br>Defendant. | Case No: 23-cv-0055-BAS-NLS<br><br>**FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Cynthia Bashant |

Plaintiff Crystal Rodriguez, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Equal Exchange, Inc. ("Equal Exchange"), and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief, including the investigation of her counsel.

## INTRODUCTION

1.     Equal Exchange markets and sells a variety of dark chocolate bars, including Organic 71% Very Dark, Organic 88% Extreme Dark, and Organic 80% Cacao Panama Extra Dark Chocolate bar (the "Products"). Equal Exchange sells the Products throughout the United States, including in California.

2.     A December 2022 report by Consumer Reports states that "[r]esearch has found that some dark chocolate bars contain cadmium and lead—two heavy metals linked to a host of health problems in children and adults," in amounts such that "eating just an ounce a day would put an adult over a level that public health authorities and [Consumer Report's] experts say may be harmful for at least one of those heavy metals." Among those containing unsafe levels of cadmium and lead is the Organic 80% Cacao Panama Extra Dark Chocolate, pictured below.



3.     As shown above, the Equal Exchange Organic 80% Cacao Panama tested at 120% of California's maximum allowable dose level (MADL) for cadmium and, while

1

below California's maximum allowable dose level for lead, as discussed in more detail below, there is no safe level of lead in food products.

4.      The Organic 71% Very Dark and the Organic 88% Extreme Dark were tested by other independent experts in March 2022, and each were found to contain not only substantial amounts of lead, but also continued to contain amounts of cadmium in excess of the MADL, in the case of the Very Dark 71%, as much as 8µg, almost twice as much as the 4.1µg MADL:[1]

 

5.      Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer, often irreversible damage to brain development, liver, kidneys, and bones, and other health

---

[1] https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate

problems. As Consumer Reports noted, "both cadmium and lead pose serious health risks" and, with respect to lead specifically, "no amount of it is considered safe."

6.    Equal Exchange markets the Products with labeling representations that convey to reasonable consumers that the Products do not contain unsafe levels of toxic heavy metals, including lead and cadmium. The Products' labels are designed and intended to, and in fact did, convince reasonable consumers, including Plaintiff, that the Products do not contain unsafe levels of toxic heavy metals, including lead or cadmium. These reasonable beliefs were reinforced by statements in other media, including on defendant's website.

7.    As described more fully below, consumers who purchased the Products were injured by Equal Exchange's acts and omissions concerning the presence of lead and cadmium. No reasonable consumer would know, or have reason to know, that the Products contained heavy metals, including lead and cadmium. Independent experts have identified the business practices of dark chocolate sellers, like Equal Exchange, as at least one of the primary reasons for the dangerous levels of heavy metals found in dark chocolate products purchased and consumed by the public. Worse, as companies across the industry have made changes to business practices and adopted methods to limit heavy metals in their dark chocolate products, Equal Exchange has stood idly by with a reckless disregard for its consumers' health and well-being.

8.    Plaintiff brings this action against Equal Exchange on behalf of herself, similarly-situated Class Members, and the general public to enjoin Equal Exchange from deceptively marketing the Products, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

9.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Equal Exchange. In addition, more

than two-thirds of the members of the class reside in states other than the state in which Equal Exchange is a citizen and in which this case is filed, and therefore any exceptions to jurisdiction under 28 U.S.C. § 1332(d) do not apply.

10.    The Court has personal jurisdiction over Equal Exchange as a result of Equal Exchange's substantial, continuous and systematic contacts with the State of California, and because Equal Exchange has purposely availed itself of the benefits and privileges of conducting business activities within the State of California, including by marketing, distributing, and selling the Products in California. Equal Exchange is also headquartered and has its principal place of business in California.

11.    Venue is proper in this Southern District of California pursuant to 28 U.S.C. § 1391(b) and (c), because Equal Exchange resides (*i.e.*, is subject to personal jurisdiction) in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

12.    Plaintiff Crystal Rodriguez is a citizen of California and is domiciled in, and is a resident of, San Diego County, California.

13.    Defendant Equal Exchange, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

## FACTS

### I.    Lead and Cadmium are Toxic and are Present in the Equal Exchange Products at Unsafe Levels

14.    "No amount of lead is known to be safe"[2] because "there is no known safe blood lead concentration."[3] This is especially true because lead accumulates in the body with repeated exposure. Even "extremely low" levels of lead exposure were "found to reduce the

---

[2] Jessica Pupovac, *Lead Levels Below EPA Limits Can Still Impact Your Health*, NPR The Two-Way (Aug. 13, 2016). Available online at https://tinyurl.com/4vt7zvr2.

[3] World Health Organization Fact Steet, Lead poisoning. Available online at https://www.who.int/news-room/fact-sheets/detail/lead-poisoning-and-health.

*Rodriguez v. Equal Exchange, Inc.*, 23-cv-0055-BAS-NLS
FIRST AMENDED CLASS ACTION COMPLAINT

cognitive capacity of children"[4] when the exposure is consistent and "prolonged intake of even [] low level[s] of lead is hazardous to human beings."[5] "Once in the bloodstream, lead is primarily distributed among three compartments – blood, mineralizing tissue, and soft tissues. The bones and teeth of adults contain more than 95% of total lead in the body."[6] However, in times of stress, "the body can mobilize lead stores, thereby increasing the level of lead in the blood," making repeated exposure, even at low levels, particularly sinister, since it is capable of lying in wait to be released into the blood at unexpected times.

15.    Along with bones, teeth and blood, many other tissues store lead in the body, including the brain, spleen, kidneys, liver, and lungs.[7] Lead has been conclusively found to have no positive physiological role in the body, "while its harmful effects are manifold."[8] The effects of lead have been well studied also at the cellular level and "heavy metals, including lead, create reactive radicals which damage cell structures, including DNA and cell membrane."[9]

16.    In particular, "young children and pregnant women especially should avoid exposure to lead."[10] Children are at particular risk when it comes to lead exposure because it can harm a child's brain development, resulting in learning and behavioral problems.[11] While the levels in any one food may be low, the cumulative effect of lead and other heavy

[4] Needleman HL, *et al*. "The longterm effects of exposure to low doses of lead in childhood--An 11-year follow-up report." N Engl J Med. 1990;322:83–88.

[5] Wani AL, *et al*. "Lead toxicity: a review." Interdiscip Toxicol. 2015 Jun;8(2):55-64. doi: 10.1515/intox-2015-0009. PMID: 27486361; PMCID: PMC4961898.

[6] *Id*.

[7] Dart RC, et al. "Lead. In: Dart RC, editor." Medical Toxicology. 3rd ed. Lippincot Williams and Wilkins; 2004.

[8] *Id*.

[9] Kosnett MJ. Lead. In: Olson K.R, editor. Poisoning and Drug Overdose. 5th ed. McGraw Hill Professional; 2006

[10] https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate

[11] https://www.centerforfoodsafety.org/

5

metals in the diet can be significant. Additionally, an EPA analysis has found that, for more than 70% of children in the US, the dominant source of lead exposure is from food.[12]

17.    Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder (ADHD)), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adults. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions.

18.    Additionally, even for adults, exposure to lead may cause anemia, weakness, and kidney and brain damage.[13] Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[14] Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.[15]

19.    Cadmium, another heavy metal, likewise poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo. Exposure to cadmium can affect the kidneys, lungs, and bones.[16] There may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level.[17] Cadmium is considered a class 1 carcinogen by the World Health

---

[12] Center for Food Safety, FDA's Outdated Lead Standards Put the Public's Health at Risk (Dec. 9, 2020). Available online at https://tinyurl.com/5fcj8uuz

[13] https://www.cdc.gov/niosh/topics/lead/health.html

[14] *Id.*

[15] Centers for Disease Control and Prevention, Childhood Lead Poisoning Prevention. Available online at https://www.cdc.gov/nceh/lead/prevention/pregnant.htm.

[16] Better Health Channel, Environmental Health, Cadmium. Available online at https://tinyurl.com/4r8frd7z.

[17] New Jersey Department of Health Fact Sheet. Available online at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0305.pdf.

6

Organization.[18] Even at low exposure, cadmium can cause nausea, vomiting, diarrhea and abdominal pain. And, because cadmium builds up in the body, even at low dosage, repeated exposure can cause liver and kidney damage, anemia, and loss of smell. According to the Centers for Disease Control and Prevention, "exposure to low levels of cadmium in . . . food . . . over time may build up cadmium in the kidneys and cause kidney disease and fragile bones" and is indisputably "considered a cancer-causing agent."[19]

20.     Like with lead, "children are more susceptible than adults to exposure from low doses of cadmium over time."[20]

21.     The Products contain lead and cadmium, and Equal Exchange has known as much for at least the last eight years. In 2014, Equal Exchange was put on notice that the Products, contained excessive cadmium and/or lead, or both, by testing from independent experts. And as recently as March 2022, each of the Products tested above the California MADL for cadmium.[21] But Equal Exchange failed to warn consumers that consuming the Products exposes them to unsafe levels of toxic heavy metals.

22.     Moreover, in December 2022, Consumer Reports, a consumer protection and advocacy organization dedicated to independent product testing, consumer-oriented research, and investigative journalism, tested 28 different dark chocolate bars for lead and cadmium. The results showed that the Organic 80% Cacao Panama Extra Dark Chocolate had about 1.2 times the MADL for cadmium. The MADL standards are set by the California Office of Environmental Health Hazard Assessment ["OEHHA"].

---

[18] United Nations Environment Porgramme, Lead and Cadmium. Available online at https://www.unep.org/explore-topics/chemicals-waste/what-we-do/emerging-issues/lead-and-cadmium.

[19] Centers for Disease Control and Prevention, National Biomonitoring Program, Cadmium Factsheet. Available online at https://tinyurl.com/y4f2kku7.

[20] As You Sow, Toxins in Chocolate. Available online at https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate

[21] Id.

23.    Notably, the lead is getting into the Products *after* harvesting. As Consumer Reports notes, "lead seems to get into cacao after beans are harvested. The researchers found that the metal was typically on the outer shell of the cacao bean, not in the bean itself. Moreover, lead levels were low soon after beans were picked and removed from pods but increased as beans dried in the sun for days. During that time, lead-filled dust and dirt accumulated on the beans." A committee of experts formed to look at ways to reduce lead found in chocolate bars concluded, in part, that the lead "contamination in chocolate products [occurs] during **post-harvest processing** and not from the uptake of [lead] in the nib."[22] Those same experts recommend that reducing the lead in the products will come from changes to "agricultural, manufacturing, [and/or] business practices"[23] and, therefore, reducing (or perhaps even eliminating) toxic heavy metals in the Products is not unreasonable.

24.    A report from the *Seattle Times* further notes that "lead levels are influenced by where and how the cacao beans are handled by humans after harvest."[24]

25.    In short, Equal Exchange could have implemented changes to harvest and manufacturing processes (or ensured it was doing business with farmers and manufacturers that implemented such measures) to eliminate, or at least significantly reduce, toxic heavy metal contamination in the Products it sold to Plaintiff and the public, but chose not to. Thus, on information and belief, Equal Exchange itself is responsible for the unsafe levels of toxic heavy metals being present in the Products, at least at the levels at which they are found.

## II.    Equal Exchange Falsely Advertises the Products

26.    Despite knowing that its Products contain unsafe levels of toxic heavy metals, including lead and cadmium, Equal Exchange intentionally marketed them so as to convey

---

[22] Expert Investigation Related to Cocoa and Chocolate Products, Final Report (Mar. 28, 2022). Available online at https://tinyurl.com/239zv83d.

[23] *Id.*

[24] Vonnai Phair, *How heavy metals get into dark chocolate bars*, Sea. Times (Feb. 10, 2023). Available online at https://tinyurl.com/mw58v97k.

to reasonable consumers, including to Plaintiff, that the Products did *not* contain such unsafe levels of toxic heavy metals.

27.    Equal Exchange advertises on the labels of the Products that they are "always small farmer grown," using ingredients that are "source[d] from small farmer organizations," and that by choosing Equal Exchange Products, consumers can "join [Equal Exchange] in changing the food system." Even if these statements are literally true, they also convey to reasonable consumers, including Plaintiff, that the Products do not contain unsafe levels of toxins, including heavy metals, because they are sourced from small, family-owned farms, and not from industrial-level farming sites where toxins may be more commonly found, or from which food products have a higher risk of being contaminated with toxins. By touting the "small farm" source of the Products, Equal Exchange is intentionally obfuscating the fact that the Products *do* contain unsafe levels of toxic heavy metals, which it knew about, but failed to disclose.

28.    These and other claims, including the labels as a whole, led reasonable consumers, including Plaintiff, to conclude that the Products do not contain unsafe levels of toxic heavy metals, and which Equal Exchange failed to disclose.

III.    **Reasonable Consumers Do Not Expect Heavy Metals in the Equal Exchange Products; Equal Exchange Nevertheless Failed to Disclose the Presence of Lead or Cadmium in the Products**

29.    The global dark chocolate market has witnessed significant growth in recent years and is expected to continue growing into 2023.[25]

30.    The growth of dark chocolate sales is premised, in part, on reasonable consumers' belief that dark chocolate is actually *healthier* than other food choices, and especially healthier than other confectionaries, specifically milk chocolates. Specifically, consumers understand that the higher cacao content in dark chocolate products results in greater antioxidant benefits. "The pervasive health and wellness trend continues to influence

---

[25] https://www.persistencemarketresearch.com/market-research/dark-chocolate-market.asp

9

dark chocolate market, with manufacturers incorporating organic ingredients and natural sweeteners. The preference for dark chocolate over milk chocolates on accounts its health benefits continues to remain intact," especially as demand for healthy products, generally, increases.[26] Thus, the safety and health effects of the Products are material facts to reasonable consumers.

31.    Given the toxic effects of lead and cadmium, the presence of unsafe levels of toxic heavy metals in the Products is a material fact to reasonable consumers, including Plaintiff and Class Members.

32.    A food company like Equal Exchange, which specifically prides itself on environmental improvement, human health, and sustainability, has earned significant public trust that its foods are safe and fit for regular consumption. Reasonable consumers believe that Equal Exchange would not sell products that are unsafe.

33.    If the presence, or risk, of unsafe levels of toxic heavy metals in its Products were disclosed to Plaintiff and the Class Members, they would be unwilling to purchase the Products or would pay less for them. Equal Exchange knew this.

34.    In light of Equal Exchange's knowledge that Plaintiff and the Class Members would be unwilling to purchase the Products or would pay less for the Products if they knew that the Products contained toxic heavy metals, Equal Exchange intentionally and knowingly concealed this fact from Plaintiff and the Class Members and did not disclose the presence of lead or cadmium on the labels of the Products.

35.    Equal Exchange knew or should have known that Plaintiff and the Class Members would rely upon the packaging of the Products, and intended for them to do so, but failed to disclose the presence of lead or cadmium.

36.    Equal Exchange knew or should have known that it owed consumers a duty of care to adequately test for lead, cadmium, and other heavy metals, particularly considering that it was provided notice of multiple independent expert testing, over many years, of the

---

[26] *Id.*

10

*Rodriguez v. Equal Exchange, Inc.*, 23-cv-0055-BAS-NLS
FIRST AMENDED CLASS ACTION COMPLAINT

Products. Had Equal Exchange done so, it would have known that its Products contained significant levels of lead and cadmium. Alternatively, Equal Exchange *did* know that its Products contained unsafe levels of heavy metals and purposely hid that fact from consumers.

37. Additionally, Equal Exchange knew or should have been aware that a reasonable consumer would consume the Products regularly, and possibly multiple Products daily, leading to repeated exposure to both lead and cadmium, which each independently accumulate in the body and its systems over time.

38. Equal Exchange knew or should have known it could control the levels of lead and cadmium in the Products by properly monitoring for heavy metal presence, sourcing ingredients with less heavy metals, or none at all, adjusting its formulation to reduce or eliminate heavy metals, or improving its manufacturing process to eliminate introduction of lead caused by Equal Exchange itself.

39. Prior to purchasing the Products, Plaintiff and the Class Members were exposed to, saw, read, and understood the labels of the Products, and relied upon the same in purchasing the Products, but Equal Exchange failed to disclose the presence of heavy metals.

40. As a result of Equal Exchange's concealment of the fact that the Products contained toxic heavy metals, including lead and cadmium, Plaintiff and the Class Members reasonably believed the Products were free from substances that would negatively affect children's development as well as their own health.

41. Plaintiff and the Class Members purchased the Equal Exchange Products in reliance upon Equal Exchange's labels that contained omissions.

42. Had Plaintiff and the Class Members known that the Products contained toxic heavy metals, rendering them unsafe for consumption, they would not have been willing to purchase the Products or would have paid less for them.

43.    Therefore, as a direct and proximate result of Equal Exchange's omissions concerning the Products, Plaintiff and the Class Members purchased the Products and paid more than they were worth.

44.    Plaintiff and the Class Members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence of toxic heavy metals, including lead and cadmium, in the Products renders them unsafe for human consumption, the Products that Plaintiff and the Class Members purchased are worthless, or at a minimum are worth less than Plaintiff and the Class paid for them.

## IV.    The Products' Labeling Violates California and Federal Food Labeling Law

45.    The Products' labeling violates California Health and Safety Code §§ 109875, *et. seq.* (the "Sherman Law"), which has expressly adopted the federal food labeling requirements as its own. *See*, *e.g.*, *id.* § 110100; *id.* § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto.").

46.    First, the labeling claims are false and misleading for the reasons described herein, in violation of 21 U.S.C. § 343(a), which deems misbranded any food whose "label is false or misleading in any particular." Equal Exchange accordingly also violated California's parallel provision of the Sherman Law. *See* Cal. Health & Safety Code § 110670.

47.    Second, Equal Exchange "fail[ed] to reveal facts that are material in light of other representations made or suggested by the statement[s], word[s], design[s], device[s], or any combination thereof," in violation of 21 C.F.R. § 1.21(a)(1). Such facts include the detrimental health consequences of consuming the Products given that they contain lead and cadmium, which are unsafe in any amount. In addition, such facts include the detrimental health consequences of consuming the Products, including inhibiting neurological function,

anemia, kidney damage, seizures, and in extreme cases, coma and death, which are all material to a consumer choosing a food product.

48. Third, Equal Exchange failed to reveal facts that were "[m]aterial with respect to the consequences which may result from use of the article under" both "[t]he conditions prescribed in such labeling," and "such conditions of use as are customary or usual," in violation of § 1.21(a)(2). Namely, Equal Exchange failed to disclose the increased risk of serious chronic disease and death that is likely to result from the usual consumption of the dark chocolate Products in the customary and prescribed manners, including regular consumption of the standard serving size.

## V.    Plaintiff's Purchase, Reliance, And Injury

49. Ms. Rodriguez regularly purchased the Equal Exchange Organic 80% Cacao Panama Extra Dark Chocolate product during the Class Period, often making her purchases from Whole Foods and Sprouts stores in San Diego, including at least the Whole Foods at 8825 Villa La Jolla San Diego, California and Sprouts locations at 3015 Clairemont Dr. and 3358 Governor Dr., in San Diego, California.

50. When purchasing the 80% Cacao Panama Extra Dark Chocolate product, Ms. Rodriguez was seeking chocolate bars she believed to be premium, or of a higher quality, than other confectionaries, and ones that did not contain any unsafe levels of toxic heavy metals – specifically like those that would come from small, family owned farms. Moreover, Ms. Rodriguez would have avoided any food she knew contained unsafe levels of toxic heavy metals like lead and cadmium. She would also have avoided purchasing any food she knew could increase her risk of inhibited neurological function, anemia, kidney damage, seizures, coma, or death.

51. Plaintiff acted reasonably in purchasing the 80% Cacao Panama Extra Dark Chocolate product, whose label did not disclose the presence of lead or cadmium, or the attendant health risks in consuming it.

52.    By omitting that its Products contains lead or cadmium, Equal Exchange was able to gain a greater share of the snack market, specifically the confectionary and dark chocolate market, than it would have otherwise and to increase the size of the market.

53.    Plaintiff paid more for the 80% Cacao Panama Extra Dark Chocolate product, and Class Members paid more for each of the Equal Exchange Products, and would only have been willing to pay less, or unwilling to purchase them at all, absent Equal Exchange's omissions regarding the lead and cadmium content described herein.

54.    Plaintiff and Class Members would not have purchased the Products if they had known that they were misbranded pursuant to California and FDA regulations, or that they contained toxic lead or cadmium in the amounts found in the Products.

55.    For these reasons, the Products were worth less than what Plaintiff and the Class Members paid.

56.    Plaintiff and the Class lost money as a result of Equal Exchange's omissions and unfair practices in that they did not receive what they paid for when purchasing the Products.

57.    Plaintiff still wishes to purchase dark chocolate products, and continues to see the Equal Exchange dark chocolate Products at the stores she regularly shops. She would purchase the Equal Exchange Products in the future if, because of an injunction requiring Equal Exchange to disclose lead or cadmium when present, she could be assured, by the absence of a disclosure, that the Products no longer contained unsafe levels of toxic metals, including lead or cadmium. But unless Equal Exchange is enjoined in the manner Plaintiff requests, she may not be able to reasonably determine whether the lead or cadmium in the Products has been addressed, or whether Equal Exchange is continuing to omit their presence. Plaintiff's substantive right to a marketplace free of fraud, where she is entitled to rely with confidence on representations such as those made by Equal Exchange, continues to be violated every time Plaintiff is exposed to the Products' labels.

58.    Equal Exchange's unfair business practices that result in higher concentrations of toxic heavy metals, including lead and cadmium, being present in the Products than are present in the cacao beans from which they are made should also be enjoined. Absent such an injunction, Plaintiff cannot be assured that Equal Exchange has stopped this unfair business practice which unnecessarily concentrates amounts of heavy metals in the Products.

59.    Plaintiffs' legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

60.    While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent a class of all persons in the United States, or alternatively in California, who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, the Equal Exchange Products (the "Class").

61.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

62.    Questions of law and fact common to Plaintiff and the Class include:

a.    whether Defendant communicated a message through its packaging and advertising that conveyed to reasonable consumers that the Products did not contain toxic chemicals, including lead and/or cadmium;

b.    whether that message was material, or likely to be material, to a reasonable consumer;

c.    whether the challenged claims are false, misleading, or reasonably likely to deceive a reasonable consumer;

d.    whether the omissions on the Products' labels with respect to lead content is material, or likely to be material, to a reasonable consumer;

e.    whether the omissions on the Products' labels with respect to cadmium

*Rodriguez v. Equal Exchange, Inc.*, 23-cv-0055-BAS-NLS
FIRST AMENDED CLASS ACTION COMPLAINT

content is material, or likely to be material, to a reasonable consumer;

f.    whether the omissions regarding lead content was reasonably likely to deceive a reasonable consumer;

g.    whether the omissions regarding cadmium content was reasonably likely to deceive a reasonable consumer;

h.    whether Equal Exchange's conduct violates public policy;

i.    whether Equal Exchange's conduct violates state or federal food statutes or regulations;

j.    whether Equal Exchange made and breached warranties;

k.    the proper amount of damages, including punitive damages;

l.    the proper amount of restitution;

m.    the proper scope of injunctive relief; and

n.    the proper amount of attorneys' fees.

63.    These common questions of law and fact predominate over questions that affect only individual Class Members.

64.    Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Equal Exchange's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products and suffered economic injury because the Products are misrepresented. Absent Equal Exchange's business practice of deceptively and unlawfully labeling the Products by omitting material information regarding its toxic lead and cadmium content, Plaintiff and Class Members would not have purchased the Products or would have paid less for it.

65.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the false and misleading advertising of foods and beverages.

66.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

67.    Equal Exchange has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

68.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violations of the Unfair Competition Law

### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

69.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

70.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

71.    Under California Business & Professions Code §17200, any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice.

72.    The acts, omissions, misrepresentations, practices, and non-disclosures of as alleged herein constitute business acts and practices.

### Fraudulent

73.    A statement or practice is fraudulent under the UCL if it is likely to deceive a significant portion of the public, applying an objective reasonable consumer test.

74.    As set forth herein, Equal Exchange's claims and omissions relating to the dark chocolate Products are likely to deceive reasonable consumers and the public.

17

1

## **Unlawful**

2    75.    As set forth herein, Equal Exchange omissions are "unlawful" under the UCL

3    in that they violate at least the following laws:

4        •    The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

5        •    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*;

6        •    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.*; and

7        •    The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety

8            Code §§ 110100 *et seq.*

9    76.    By violating these laws, Defendant has engaged in unlawful business acts and

10    practices, which constitute unfair competition within the meaning of Business & Professions

11    Code § 17200.

12    ## **Unfair**

13    77.    Equal Exchange's conduct with respect to the labeling, advertising, and sale of

14    the Products was unfair because Equal Exchange's conduct was immoral, unethical,

15    unscrupulous, or substantially injurious to consumers, and the utility of its conduct, if any,

16    does not outweigh the gravity of the harm to its victims.

17    78.    Equal Exchange's conduct including during post-harvesting, processing,

18    storing, and ultimate sale of the Products to consumers was unfair because it unnecessarily

19    introduced additional amounts of lead and cadmium into the bars. Specifically, a significant

20    amount of the lead and cadmium found in the Products sold at retail is introduced into the

21    beans after they were picked and removed from pods, and then again, more heavy metals are

22    introduced into the final retail Products. Equal Exchange's unfair business practices

23    ultimately led to unsafe levels of toxic heavy metals being present in the Products.

24    79.    Equal Exchange's conduct with respect to the labeling, advertising, and sale of

25    the Products was also unfair because it violates public policy as declared by specific

26    constitutional, statutory or regulatory provisions, including but not necessarily limited to the

27

28

False Advertising Law, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

80.    Equal Exchange's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Equal Exchange through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products unaware that they contain toxic lead or cadmium and are of the type that can increase the risk of poor health. Consumers could not have reasonably avoided the harm because this would have required that they conduct their own research into the lead and/or cadmium content of the Products, which could only feasibly be revealed by laboratory testing, which is not a reasonable expectation. Further, the harm could have easily been avoided by Equal Exchange as it would have cost them only minimally to indicate to consumers that the Products contain unsafe toxic heavy metals, or that these toxins can over time accumulate in the body to the point where poisoning, injury, and/or disease can occur.

81.    Equal Exchange profited from the sale of the falsely, deceptively, and unlawfully advertised the Equal Exchange Products to unwary consumers.

82.    Plaintiff and Class Members are likely to continue to be damaged by Equal Exchange's deceptive trade practices, because Equal Exchange continues to disseminate misleading information. Thus, injunctive relief enjoining Equal Exchange's deceptive practices is proper.

83.    Equal Exchange's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Equal Exchange unlawful conduct.

84.    In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Equal Exchange from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices.

85.    Plaintiff and the Class also seek an order for the restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

86.    Because Plaintiff's claims under the "unfair" prong of the UCL sweep more broadly than their claims under the FAL, CLRA, or UCL's "fraudulent" prong, Plaintiff's legal remedies are inadequate to fully compensate Plaintiff for all of Equal Exchange's challenged behavior.

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

87.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

88.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

89.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

90.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to the Products was likely to mislead consumers acting reasonably, as to the healthfulness of the Products.

91.    Plaintiff suffered injury in fact as a result of Defendant's actions as set forth herein because Plaintiff purchased the Products in reliance on Defendant's false and

misleading marketing claims stating or suggesting that Products do not contain toxic heavy metals, including lead and/or cadmium.

92.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from the Products' labeling.

93.    Defendant profited from the sale of the falsely and deceptively advertised Products to unwary consumers.

94.    As a result, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

95.    Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of herself and the Class, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

96.    Because the Court has broad discretion to award restitution under the FAL and could, when assessing restitution under the FAL, apply a standard different than that applied to assessing damages under the CLRA or commercial code (for Plaintiff's breach of warranty claims), and restitution is not limited to returning to Plaintiff and class members monies in which they have an interest, but more broadly serves to deter the offender and others from future violations, the legal remedies available under the CLRA and commercial code are more limited than the equitable remedies available under the FAL, and are therefore inadequate.

### THIRD CAUSE OF ACTION

### Violations of the Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750 *et seq.*

97.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

98.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

99.    Equal Exchange's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Equal Exchange Products for personal, family, or household purposes by Plaintiff and Class Members, and violated and continue to violate the following sections of the CLRA:

        a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

        b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

        c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

        d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

100.    Equal Exchange profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

101.    Equal Exchange's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

102.    Pursuant to California Civil Code § 1782, more than 30 days before filing this amended complaint, Plaintiff sent written notice of her claims and of Equal Exchange's

*Rodriguez v. Equal Exchange, Inc.*, 23-cv-0055-BAS-NLS
FIRST AMENDED CLASS ACTION COMPLAINT

particular violations of the Act to Equal Exchange by certified mail, return receipt requested, but Equal Exchange has failed to implement remedial measures.

103.    Plaintiff and the Class have suffered harm and seek (a) actual damages resulting from purchases of the Equal Exchange Products sold throughout the Class Period to all Class Members, (b) punitive damages, (c) injunctive relief in the form of modified advertising and a corrective advertising plan, (d) restitution, and (e) attorneys' fees and costs. *See* Cal. Civ. Code § 1782(d).

104.    In compliance with Cal. Civ. Code § 1780(d), an affidavit of venue was filed with the original complaint. *See* Dkt. No. 1-2.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties, Cal. Com. Code § 2313(1)

105.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth fully herein.

106.    Through the Products' labeling, Defendant made affirmations of fact or promises, or description of goods, that, inter alia, the products are free of harmful toxins, including lead and cadmium. These promises include those identified, *supra*, in Section II, ¶¶ 26-28.

107.    These representations were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

108.    Defendant breached its express warranties by selling the Products that are not free from harmful, but rather contain harmful levels of toxic chemicals, including lead and cadmium, which are likely to increase the risk of chronic diseases.

109.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class Members paid for the Products.

110.   As a result, Plaintiff seeks, on behalf of herself and other Class Members, their actual damages arising as a result of Defendant's breaches of express warranty, including, without limitation, expectation damages.

### FIFTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314

111.   Plaintiff realleges and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

112.   As set forth herein, Equal Exchange manufactured and sold the Products, and prior to the time the Products were purchased by Plaintiff and other Class Members, impliedly warranted that the Products were of merchantable quality and fit for their ordinary use, i.e., consumption by consumers, including children.

113.   Equal Exchange is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there were, in the sale to Plaintiff and the Class, implied warranties that those goods were merchantable.

114.   Equal Exchange impliedly warranted to retail buyers that the Products were merchantable in that they (a) would pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used. Defendant breached this implied warranty because the Products were unsafe in that it contained toxic lead and cadmium. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used, which is consumption by consumers, including children.

115.   Moreover, Equal Exchange, through its acts set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class Members that, among other things, the Products do not contain toxic heavy metals, including lead or cadmium. However, the Products do contain unsafe levels of toxic heavy metals, including lead and cadmium, as set forth in detail herein. Thus, Equal Exchange breached that implied warranty.

116. Equal Exchange was on notice of this breach as it was aware of the lead and cadmium in the Products, including based on receiving notice in at least 2014.

117. As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods. Further, Plaintiff and the Class Members have been injured and harmed because they would not have purchased the Products or would have paid less for it if they knew the truth about the Products, namely, that they contained lead and cadmium.

118. As a result, Plaintiff seeks actual damages, including, without limitation, expectation damages.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

119. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

120. Equal Exchange's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Products, and the economic benefits conferred on Equal Exchange are a direct and proximate result of its unlawful and inequitable conduct.

121. It would be inequitable, unconscionable, and unjust for Equal Exchange to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

122. As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Equal Exchange as a result of such business practices.

### PRAYER FOR RELIEF

123. Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Equal Exchange as to each and every cause of action, and the following remedies:

25

    a.    An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

    b.    An Order requiring Equal Exchange to bear the cost of Class Notice;

    c.    An Order compelling Equal Exchange to destroy all misleading and deceptive advertising materials and product labels, and to recall all offending Products;

    d.    An Order compelling Equal Exchange to cease its unfair business practices which unnecessarily result in concentrating high levels of heavy metals in the Products;

    e.    An Order requiring Equal Exchange to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

    f.    An Order requiring Equal Exchange to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, or untrue or misleading advertising, plus pre-and post-judgment interest thereon;

    g.    An Order requiring Equal Exchange to pay compensatory damages and punitive damages as permitted by law;

    h.    An award of attorneys' fees and costs; and

    i.    Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

124.  Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 17, 2023        /s/ Trevor Flynn

                    **FITZGERALD JOSEPH LLP**
                    JACK FITZGERALD
                    *jack@fitzgeraldjoseph.com*
                    PAUL K. JOSEPH
                    *paul@fitzgeraldjoseph.com*

MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

***Counsel for Plaintiff***

*Rodriguez v. Equal Exchange, Inc.*, 23-cv-0055-BAS-NLS
FIRST AMENDED CLASS ACTION COMPLAINT