**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Crystal RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EQUAL EXCHANGE, INC.,<br><br>Defendant. | Case No.: 23-cv-0055-AGS-SBC<br><br>**ORDER GRANTING MOTION TO DISMISS IN PART (ECF 12)** |

This consumer-protection case largely turns on whether it is barred by California's Safe Drinking Water and Toxic Enforcement Act, commonly dubbed "Proposition 65." The Court grants much of the defense's motion to dismiss, but parts of the lawsuit survive.

## BACKGROUND

According to the amended complaint, defendant Equal Exchange, Inc., "markets and sells a variety of dark chocolate bars." (ECF 10, at 2.) Two of defendant's products purportedly "contain not only substantial amounts of lead, but also . . . amounts of cadmium in excess" of the maximum level allowable in California. (*Id.* at 2–3.) Equal Exchange allegedly "failed to disclose" that its products "contain unsafe levels of [these] toxic heavy metals." (*Id.* at 10.)

A consumer of these chocolates, plaintiff Crystal Rodriguez, seeks to represent a class against Equal Exchange for violations of California's: (1) unfair competition law; (2) false advertising law; and (3) consumers legal remedies act. (*Id.* at 18–24.) She also brings claims for (4) breach of express warranty; (5) breach of implied warranty of merchantability; and (6) unjust enrichment. (*Id.* at 24–26.) Equal Exchange moves to dismiss the complaint on various grounds.

## DISCUSSION

### A. Judicial Notice

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (cleaned up). There is an exception for "matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The Court may notice facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Equal Exchange requests judicial notice of, among other things, a consent judgment entered in *As You Sow v. Trader Joe's Co.*, No. CGC-15-548791 (Cal. Super. Ct. S.F. Cnty. Feb. 14, 2018), and a publication by the Federal Drug Association titled "Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods." (ECF 13, at 2–3; ECF 13-4; ECF 13-10.) Rodriguez does not object to judicial notice of the consent judgment, and since it is a "court filing and matter of public record," Equal Exchange's request is granted in this regard. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

As for the FDA publication, the Court may take judicial notice of a document "made publicly available by government entities" if "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall v. National Educ. Assn.*, 629 F.3d 992, 998–99 (9th Cir. 2010). Rodriguez does not dispute the authenticity of the website. (*See* ECF 14, at 3–5.) She does dispute, however, Equal Exchange's characterizations of certain facts contained in the publication, namely: that "[l]ead and cadmium are unavoidable in the general food supply" and that "it is impossible to remove elements such as lead and cadmium from foods entirely." (ECF 14, at 2 (cleaned up).) Thus, the Court denies Equal Exchange's request for judicial notice of the publication to the extent its contents are disputed, but grants the request as to the rest of the document. *See Rodriguez v. Mondelez Glob. LLC*, No. 23-CV-00057-DMS-AHG, __ F. Supp. 3d __, 2023 WL 8115773, at *4 (S.D. Cal. Nov. 22, 2023) (taking "judicial notice" of certain

exhibits, "but not of the facts contained within them subject to reasonable dispute"). Equal Exchange's request is otherwise denied as it pertains to matters not relevant to the issues at hand. *See Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990) (declining to take judicial notice of an item "not relevant to this case").

**B.    Standing**

"The irreducible constitutional minimum of standing consists of three elements: The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). Equal Exchange challenges the injury-in-fact prong, arguing Rodriguez has failed to establish a particularized, non-hypothetical injury. (*See* ECF 12, at 17–19.)

"To qualify as an injury-in-fact, an alleged harm must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Rodriguez claims she was "harmed in the form of monies [she] paid" for defendant's products, "which [she] would not otherwise have paid had [she] known the truth" about the products. (ECF 10, at 13.) Specifically, Rodriguez alleges she "would only have been willing to pay less, or unwilling to purchase [defendant's products] at all, absent [defendant's] omissions regarding the lead and cadmium content." (*Id.* at 15.)

The Ninth Circuit has recognized that a "quintessential injury-in-fact" includes when an omission of a required disclosure means "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya*, 658 F.3d at 1069. That is exactly what Rodriguez alleges. She claims to have spent money that, absent Equal Exchange's omission, she would not have. Courts reviewing this same argument concerning Rodriguez's dark-chocolate-with-heavy-metals claims have been unanimous that her economic injury bestows standing. *See Rodriguez*, 2023 WL 8115773, at *7 (holding chocolate maker's "argument that Plaintiffs' alleged injury—lost money—is not an injury-in-fact is unpersuasive"); *Rodriguez v. Endangered Species Chocolate, LLC*, No. 23-cv-0054-BTM-JLB (S.D. Cal. Mar. 18, 2024), ECF 26, at 3 ("Plaintiff has alleged an

3

economic injury in fact."). As she has standing to challenge the labeling, the Court need not address defendant's unrelated attacks on the injury-in-fact prong. Regardless, Equal Exchange's motion to dismiss for lack of standing is denied.

### C.   Proposition 65

Equal Exchange moves to dismiss Rodriguez's complaint for failing to comply with Proposition 65's notice requirement. (ECF 12, at 21–23.) Proposition 65 obliges businesses to place a conspicuous "warning" on products that contain levels of certain chemicals—such as lead and cadmium—that pose a "significant risk" of causing cancer, birth defects, or reproductive harm. *See* Cal. Health & Safety Code §§ 25249.6, 25249.10(c); Cal. Code Regs. tit. 27, § 27001(b) (listing "lead" and "cadmium"). Private parties who wish to sue to enforce Proposition 65's requirements must first wait 60 days after giving "notice of an alleged violation" to several parties: "the alleged violator," California's Attorney General, and local prosecutors. Cal. Health & Safety Code § 25249.7(d). This prerequisite is "strictly enforce[d]," and "defective notice cannot be cured retroactively." *Harris v. R.J. Reynolds Vapor Co.*, No. 15-cv-04075-JD, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016). So, a "Proposition 65 claim" that jumps the gun and proceeds without such notice must "be dismissed with prejudice." *Id*.

Crucially, this notice precondition applies to actions explicitly brought under Proposition 65 as well as to camouflaged suits to enforce Proposition 65's strictures using other laws. In other words, plaintiffs "cannot sidestep these requirements" by repurposing consumer-protection statutes to "plead around" claims that would otherwise "be barred under Proposition 65." *See Harris*, 2016 WL 6246415, at *2 (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999)). Thus, courts must assess whether a plaintiff's claims are "independent of" or "entirely derivative of an unspoken Proposition 65 violation." *Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345 DMS (AGS), 2020 WL 6106813, at *4 (S.D. Cal. Apr. 27, 2020).

Rodriguez admittedly never gave prelitigation notice, but she didn't explicitly sue under Proposition 65 either.[1] She argues that her consumer-protection claims are "independent of any duty to warn under Proposition 65." (ECF 15, at 23.) Thus, this Court must determine whether her lawsuit is a disguised effort to press claims under Proposition 65, while skirting its notice barrier. In particular, this Court will analyze whether any of Rodriguez's claims target the (1) chemicals and (2) conduct that Proposition 65 seeks to regulate, as well as (3) the harms the law seeks to prevent.

### 1. *Regulated Chemicals (of Any Amount)*

As an initial matter, Proposition 65 covers failure-to-warn lawsuits involving its regulated chemicals, regardless of their amount. If a product contains a regulated chemical in an amount that poses a "significant risk"—meaning above California's maximum allowable dose level—Proposition 65 authorizes (properly noticed) lawsuits against a company for failing to place a warning label on that product. *See* Cal. Health & Safety Code §§ 25249.6, 25249.10(c); Cal. Code Regs. tit. 27, § 25705(b)(1) (establishing specific levels of "micrograms per day" for "lead" and "cadmium" that pose "no significant risk"). On the other hand, if the amount of that chemical in the product poses no such "significant risk"—meaning it falls below the allowable level—then no label about cancer and reproductive risks is required and any failure-to-warn lawsuit concerning those risks is barred by Proposition 65's safe-harbor provision. *See* Cal. Health & Safety Code § 25249.10(c). Either way, Proposition 65 dictates whether a failure-to-warn case may proceed. Plaintiffs may not "plead around" Proposition 65's notice requirement nor its

---

[1] Because the notice facts are undisputed, the Court may consider this argument at the pleading stage. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (permitting consideration of "affirmative defenses" in a "motion to dismiss" when "the defense raises no disputed issues of fact"); *see also Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) (reviewing a similar preemption defense at the pleading stage because the "arguments are purely legal," they "do not depend on resolution of any factual disputes," and "no discovery is necessary" (cleaned up)).

safe-harbor provision. *Harris*, 2016 WL 6246415, at *2. *But see Rodriguez*, 2023 WL 8115773, at *8 (denying an identical argument against a virtually identical complaint because plaintiffs allege that "lead and cadmium 'in any amount' is 'unsafe,'" even at levels within Proposition 65's safe harbor).

Plaintiffs might prefer an interpretation of Proposition 65 that allowed lawsuits to proceed so long as they alleged levels of regulated chemicals *below* the state's safety thresholds. But such an interpretation would improperly undermine Proposition 65's safe-harbor provision. So long as a product's lead or cadmium quantities remain under the published guidance, California deems it "to pose no significant risk" for cancer or reproductive health and thus exempts the business from warnings about those risks. *See* Cal. Health & Safety Code § 25249.10(c); Cal. Code Regs. tit. 27, § 25705(b)(1). Permitting a challenge under the various consumer-protection theories would allow plaintiff to argue that the safe-harbor provision's guidelines are wrong. Yet California law is clear: "When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns*, 973 P.2d at 541.

In this case, Rodriguez claims that there are dangerous amounts of lead and cadmium in Equal Exchange's chocolate. (ECF 10, at 2 ("Equal Exchange Organic 80% Cacao Panama tested at 120% of California's maximum allowable dose level (MADL) for cadmium and, while below California's maximum allowable dose level for lead, as discussed in more detail below, there is no safe level of lead in food products.").) "Lead and cadmium are regulated by Proposition 65." *Rodriguez*, 2023 WL 8115773, at *8. Thus, Proposition 65 is implicated by both chemicals. It makes no difference that Rodriguez contends that only cadmium tested above "California's maximum allowable dose level," while lead was below the state limit. (ECF 10, at 2–3.) Nor does it matter that she alleges "any" amount of these metals may cause cancer or reproductive toxicity. (ECF 10, at 13 ("[L]ead and cadmium . . . are unsafe in any amount.").)

6

### 2. *Regulated Conduct*

Rodriguez's complaint faults Equal Exchange for failing to display a warning on its products and for affirmatively misleading its customers about toxic risks.

    a. *Omission of Warning Label*

The vast majority of Rodriguez's allegations are squarely aimed at the failure-to-warn conduct that Proposition 65 regulates. *See* Cal. Health & Safety Code § 25249.6 ("No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual."). In particular, Rodriguez condemns Equal Exchange's alleged failure to "disclose the presence of lead or cadmium on the labels" of its products. (ECF 10, at 11; *see id.* at 12 ("[Defendant's] labels . . . contained omissions."); *id.* at 13 (stating plaintiff was harmed "as a direct and proximate result of [defendant's] omissions").) All such warning-label allegations implicate Proposition 65.

    b. *Affirmative Misrepresentations*

Yet Rodriguez insists that Equal Exchange has gone beyond the offenses of omission that Proposition 65 seeks to prevent and has affirmatively deceived its customers. If so, the Court agrees that Proposition 65 would be no obstacle to such claims. Allegations of "misleading statements and affirmative misrepresentations" fall outside Proposition 65's ambit. *Gutierrez*, 2020 WL 6106813, at *6. The problem with Rodriguez's misrepresentation claims is not Proposition 65, however, but the plausibility of her affirmative-deception theory.

According to Rodriguez, Equal Exchange "advertises on the labels of the Products that they are 'always small farmer grown,' using ingredients that are 'sourced from small farmer organizations,' and that by choosing Equal Exchange Products, consumers can 'join Equal Exchange in changing the food system.'" (ECF 10, at 10.) "Even if these statements are literally true," complains Rodriguez, "they also convey to reasonable consumers, including Plaintiff, that the Products do not contain unsafe levels of toxins, including heavy

metals." (*Id.*) Thus, "[b]y touting the 'small farm' source of the Products, Equal Exchange is intentionally obfuscating the fact that the Products *do* contain unsafe levels of toxic heavy metals, which it knew about, but failed to disclose." (*Id.*) Rodriguez argues that these "partial representations" are enough to suggest an affirmative misrepresentation. (ECF 15, at 23.)

There are at least a couple problems with Rodriguez's misrepresentation rationale. First, this Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). On that basis alone, the Court rejects Rodriguez's unfounded assertion that the current labels "convey to reasonable consumers . . . that the Products do *not* contain unsafe levels of toxins." (*See* ECF 10, at 9–10.) Second, Rodriguez is attempting to smuggle Proposition 65's labeling requirement in through the back door. She lists everything that *is* on Equal Exchange's labels and then cries misrepresentation because it doesn't include any (Proposition 65-style) warnings about lead and cadmium. None of this comes close to a valid misrepresentation claim, such as if Rodriguez alleged defendant lied about the chemical content of its products. *Compare Gutierrez*, 2020 WL 6106813, at *1, *6 (finding "affirmative misrepresentations" in allegations that that the "Products are safe and free of asbestos" when they allegedly "contain[ed] hazardous substances like asbestos"); *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 794 (N.D. Cal. 2015) (allowing independent actions based on defendant's "misleading consumers into believing that the amounts of 4-Mel in the Pepsi Beverages were lower than they were").

In short, it is not plausible that the labeling statements here—such as "always small farmer grown"—are misrepresentations about toxin levels that support an independent cause of action. Regardless of Proposition 65 concerns, the misrepresentation claims must be dismissed. So that leaves only the failure-to-warn allegations set out above that are squarely at the heart of Proposition 65.

### 3. *Harms Covered*

Finally, Rodriguez's claims are aimed at a host of harms, including some explicitly covered by Proposition 65 and some that aren't. The Court analyzes those separately.

a. *Cancer and Reproductive Toxicity*

Proposition 65 is specifically concerned with chemicals "known to the state to cause cancer" or "reproductive toxicity." Cal. Health & Safety Code § 25249.6. And Rodriguez's amended complaint is chock full of claims that the lead and cadmium in Equal Exchange's products cause both. (*See, e.g.*, ECF 10, at 3 ("Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer"); *id.* at 7 ("Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions."); *id.* ("Lead can also cross the fetal barrier during pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth"); *id.* ("Cadmium, another heavy metal, likewise poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo.").)

Indeed, Rodriguez repeatedly relies on the maximum allowable lead and cadmium dosage permitted under Proposition 65 to make her case. (*See, e.g.*, *id.* at 2 ("Equal Exchange Organic 80% Cacao Panama tested at 120% of California's maximum allowable dose level (MADL) for cadmium and, while below California's maximum allowable dose level for lead, as discussed in more detail below, there is no safe level of lead in food products"); *id.* at 3 (stating Equal Exchange's products "also continued to contain amounts of cadmium in excess of the MADL, in the case of the Very Dark 71%, as much as 8μg, almost twice as much as the 4.1μg MADL"); *id.* at 8 ("[A]s recently as March 2022, each of the Products tested above the California MADL for cadmium."); *id.* ("Organic 80% Cacao Panama Extra Dark Chocolate had about 1.2 times the MADL for cadmium.").)

Rodriguez's failure-to-label claims based on such allegations are an end-run around Proposition 65's notice requirements. So, Proposition 65 bars any claims concerning Equal

Exchange's duty to warn about the carcinogenic or reproductive-toxicity risks of lead or cadmium in its products.

   b. *Harms Beyond Proposition 65's Scope*

Lastly, Rodriguez argues that Proposition 65 does not bar her claims to the extent she alleges that "the lead and cadmium in the Products" cause health problems outside the law's ambit, such as "irreversible damage to brain development, liver, kidneys, and bones." (ECF 15, at 24 (quoting ECF 10, at 5).) Rodriguez has a point.

In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company*, the California Supreme Court established that a plaintiff may not "'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.'" 973 P.2d at 541. But such a bar to relief—like Proposition 65's safe-harbor provision and notice requirement—"must *actually* bar" the specific unfair-competition claim "and not merely fail to allow it." *See id*. at 542 (emphasis added). Proposition 65 *actually* bars Rodriguez's consumer-protection claims that the lead and cadmium here pose a dangerous risk of cancer and reproductive toxicity. But it does not address lawsuits about whether these chemicals cause other ills, like brain damage. Similarly, Proposition 65's safe harbor protects companies who fail to warn about cancer and birth defects when the regulated chemicals in their products are below the state threshold. But that safe harbor doesn't reach warnings about liver and kidney toxicity, so lawsuits about those harms fall outside Proposition 65's scope.

Put another way, Proposition 65 doesn't explicitly *authorize* suits based on these other risks, but it doesn't have to. *See Cel-Tech Commc'ns*, 973 P.2d at 542 (requiring that the "other provision must actually bar" liability on the asserted basis, "not merely fail to allow it"). The bottom line: Proposition 65 doesn't require warnings about these other risks—like brain and bone damage—nor does it set chemical-threshold standards for such warnings. So, a suit alleging a failure to warn about these risks isn't a Proposition 65 action in disguise.

Several other courts considering virtually identical cases have likewise concluded that failure-to-warn suits about such other harms don't run afoul of Proposition 65. *See, e.g.*, *Rodriguez*, 2023 WL 8115773, at *8 ("Plaintiffs further allege that lead and cadmium can cause 'irreversible damage to brain development, liver, kidneys, and bones, and other health problems.' These alleged harms are outside the scope of Proposition 65."); *Grausz v. Hershey Co.*, No. 23-CV-00028-AJB-SBC, 2023 WL 6206449, at *7 (S.D. Cal. Sept. 11, 2023) ("Hershey should have disclosed the presence of lead and cadmium in the Products irrespective of Proposition 65, including risks that fall outside the scope of Proposition 65," like "an array of health complications in addition to cancer and reproductive harm."); *see also Barnes v. Natural Organics, Inc.*, No. EDCV 22-314 JGB (PLAx), 2022 WL 4283779, at *5 (C.D. Cal. Sept. 13, 2022) (finding that the "pleadings are sufficient to support an independent duty to disclose irrespective of Proposition 65," as "Barnes alleges that Heavy Metal consumption can contribute to a variety of health complications in addition to those that are the focus of Proposition 65 (cancer and reproductive harm)"). *But see Rodriguez v. Endangered Species Chocolate, LLC*, No. 23-cv-0054-BTM-JLB (S.D Cal. Mar. 18, 2024) (ECF 26, at 7) (dismissing Rodriguez's similar claims in their entirety because "the failure to disclose lead [and cadmium] content on [d]efendant's label . . . is a [Proposition 65] issue at its core" and allowing a suit to proceed based on other ills "would essentially eliminate the rule . . . because other negative outcomes are all but assured for toxins governed by Proposition 65").

To the wisdom of these jurists, this Court would add two final points. First, the California Supreme Court has admonished that, "if the Legislature did not consider that activity in those circumstances, the failure to proscribe it in a specific provision" permits the court to consider it "under the unfair competition law." *See Cel-Tech Commc'ns*, 973 P.2d at 542. With Proposition 65, the Legislature was focused on the risks of cancer and reproductive toxicity. It neither considered nor proscribed suits based on a litany of other harms. Second, courts that construe Proposition 65's bar broadly—rather than narrowly, as this Court suggests—frustrate the purpose of Proposition 65 itself, which was

"designed to protect the public." *See Center for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 94 Cal. Rptr. 3d 74, 78 (Ct. App. 2009). A more sweeping litigation bar would insulate manufacturers from damages caused by heavy metals at levels unsafe for, say, the liver or kidney, so long as they are deemed safe for cancer and reproductive toxicity. In other words, the Court would be protecting the manufacturer at the *detriment* of the public—and without any authorizing language in Proposition 65 justifying such an expansive result.

In sum, Proposition 65's notice requirement and safe-harbor provision do not apply to claims regarding noxious ills beyond cancer and reproductive toxicity. This does *not* mean that defendants necessarily have a duty to warn. That is a matter to be decided later, on the merits. At this point, it is enough that Proposition 65 does not bar consideration of the issue. Thus, defendant's request to dismiss on this ground is granted in part. All claims of a duty to warn arising from lead's or cadmium's alleged impact on cancer or reproductive toxicity are dismissed. But the claims partially survive on the theory that defendant failed to warn about those chemicals' other risks, like brain and liver damage.

### D.   Res Judicata

Next, Equal Exchange maintains that Rodriguez's claims are "barred" by "res judicata" from a "consent judgment" that was a "full, final, and binding resolution of any alleged violation of Proposition 65 for failure to provide warnings [on its products] of exposure to lead and/or cadmium." (ECF 12, at 24.) Under that consent judgment, the relevant warning is: "Consuming this product may expose you to chemicals including lead and cadmium, which are known to the State of California to cause cancer and birth defects or other reproductive harm." (ECF 13-10, at 22 (brackets omitted).) As the Court has already dismissed all such Proposition 65 claims, this duplicative request to dismiss is denied as moot.

### E.   Primary Jurisdiction

Equal Exchange also requests dismissal under the primary-jurisdiction doctrine. That "is a prudential doctrine under which courts may, under appropriate circumstances,

determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). "Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." *Id.* (cleaned up). In such a case, a court may "stay proceedings or [] dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

The primary-jurisdiction doctrine applies when "there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086–87 (9th Cir. 2006). "[C]ourts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015). Indeed, in the Ninth Circuit "efficiency is the deciding factor in whether to invoke primary jurisdiction." *Id.*

Equal Exchange claims their "product labeling falls squarely within the jurisdiction of the FDA," and "the determination of the issues posed in this case requires FDA's special 'expertise.'" (ECF 12, at 27.) There is no doubt that Congress granted the FDA regulatory authority over "false and misleading" food labeling under the Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 343(a). But as to efficiency, "primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Astiana*, 783 F.3d at 761. Equal Exchange offers FDA press releases to suggest the agency plans to issue some kind of guidance by "2025" regarding "lead" and (sometime afterwards) "cadmium" in "baby food," but not for dark chocolate. (*See* ECF 13-4, at 2–12.) It's unclear whether the FDA will issue any guidance at all about

labeling. So waiting for the FDA's updated baby-food guidance may not have any effect on this proceeding and may simply delay everything for a year or more.

Instead, this case "presents a typical false advertising case well within the province" of the court since "every day courts decide whether conduct is misleading." *See Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 751 (S.D. Cal. 2020). This court recently considered a slew of dark-chocolate-labeling cases and declined to invoke primary jurisdiction in each. *See, e.g.*, *Grausz*, 2023 WL 6206449, at *7 (refusing "to apply the doctrine of primary jurisdiction" because the complaint "presents a typical consumer protection case within this Court's province" and doesn't require "FDA expertise"); *Rodriguez*, 2023 WL 8115773, at *14 ("Given the uncertainty of what action the FDA will take on lead and cadmium, and when, the Court declines to invoke the primary jurisdiction doctrine."); *Rodriguez v. Endangered Species Chocolate, LLC*, No. 23-cv-0054-BTM-JLB (S.D Cal. Mar. 18, 2024), ECF 26, at 5 ("The Court finds the primary jurisdiction doctrine inapplicable . . . ."); *In re Trader Joe's Co. Dark Chocolate Litig.*, No. 3:23-CV-0061-RBM-KSC, 2024 WL 1319725, at *14–15 (S.D. Cal. Mar. 27, 2024) (declining to dismiss or stay "under the primary jurisdiction doctrine"). This Court likewise rejects Equal Exchange's request for primary-jurisdiction relief.

### F.   Implied Warranty of Merchantability

Equal Exchange next argues that Rodriguez's claim for a breach of the implied warranty of merchantability "fails" because "the Consent Judgment . . . establish[ed] that the bars were fit for consumption." (ECF 12, at 29–30.) Initially, though, the consent judgment only establishes the standard for Proposition 65 claims. (*See* ECF 13-10, at 6 ("[T]he Parties (as defined in section 2) enter into this Consent Judgment as a full settlement of all Proposition 65 claims . . . ."), *id.* at 22 (setting out this required warning if the lead or cadmium amount "exceeds an applicable trigger": "Consuming this product may expose you to . . . lead and cadmium, which are known to the State of California to cause cancer and birth defects or other reproductive harm" (brackets omitted)).) The

Proposition 65 claims have already been dismissed and have no effect on Rodriguez's remaining claims.

Regardless, Rodriguez has stated a claim for the implied warranty. The California Commercial Code implies a warranty of merchantability that goods are "fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c). A breach of this warranty "occurs if the product lacks even the most basic degree of fitness for ordinary use." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009). "The ordinary use of food [is] to be eaten; thus, food that cannot be safely consumed lacks even the most basic degree of fitness for its ordinary use." *Rodriguez*, 2023 WL 8115773, at *13 (cleaned up).

Rodriguez repeatedly alleges that Equal Exchange's chocolate bars are "unsafe for consumption." (ECF 10, at 12, 13, 25.) She bases this claim on the assertion that "both cadmium and lead pose serious health risks and, with respect to lead specifically, no amount of it is considered safe" regardless of Equal Exchange's compliance with the consent judgment. (ECF 10, at 4.) Equal Exchange disputes this claim, but the question of whether its products "actually pose a risk to health is ultimately a question of fact that cannot be decided at this stage." *See Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019). So Rodriguez has "sufficiently stated a claim for breach of [the] implied warranty of merchantability." *See Rodriguez*, 2023 WL 8115773, at *13 (analyzing functionally identical allegations).

### G.  Unfair Competition, False Advertising, and Unjust Enrichment

Equal Exchange asserts that Rodriguez's Unfair Competition Law, False Advertising Law, and unjust-enrichment claims must be dismissed. First, Equal Exchange argues that they all "authorize only equitable" relief and Rodriguez's "legal remedies are adequate." (ECF 12, at 28.) Alternatively, the defense argues that, at least as to the False Advertising Law claim, Rodriguez fails to state a plausible claim for relief because she didn't allege Equal Exchange made an "affirmative misrepresentation." (*Id.* at 29.)

### 1. *Equitable Remedies*

Equal Exchange is correct that all three claims authorize only equitable relief. *See Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022) ("The UCL provides only for equitable remedies." (cleaned up)); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D. Cal. 2018) ("The only forms of relief that a private individual may pursue under the UCL and FAL are the equitable remedies of restitution and injunctive relief."); *Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229 (Ct. App. 2003) ("[U]njust enrichment claim is grounded in equitable principles of restitution."). And "equitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009). So Rodriguez "must establish that she lacks an adequate remedy at law" before she can get "equitable restitution for past harm" or injunctive relief. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). This is so "[r]egardless of whether California authorizes its courts to award equitable restitution . . . when a plain, adequate, and complete remedy exists at law." *Sonner*, 971 F.3d at 845.

Turning first to restitution, Rodriguez admits that she seeks "actual damages"—a legal remedy—under both her "CLRA [Consumers Legal Remedies Act]" and "implied warranty" claims. (ECF 15, at 32.) But she argues that *Sonner*'s rule barring equitable relief does not apply because her "equitable claims challenged a broader set of harms and seek different amounts in relief, [so] the Court should deny Equal Exchange's motion." (*Id.*) She points out that her claim for "actual damages" under the CLRA, which is "measured by the price premium," leaves less room for recovery than her restitution claims under the Unfair Competition Law and False Advertisement Law for "all monies from the sale of the Products." (*Id.*) Thus, Rodriguez concludes, her damages remedies are inadequate. (ECF 15, at 32.)

But "an adequate legal remedy is not rendered inadequate simply because it might provide relief different from an alternative equitable remedy." *Turrey v. Vervent, Inc.*, No. 20-CV-00697-DMS-AHG, 2023 WL 6390620, at *4 (S.D. Cal. Sept. 29, 2023); *Guzman*, 49 F.4th at 1312 (dismissing equitable claims when plaintiff "had an adequate

remedy at law through his CLRA claim for damages, even though he could no longer pursue it" since it was time-barred).

The story, however, is different for her injunctive-relief requests. Rodriguez requests an injunction on Equal Exchange's labeling because she "still wishes to purchase dark chocolate products, and continues to see the Equal Exchange dark chocolate Products at the stores she regularly shops." (ECF 10, at 15.) "She would purchase the Equal Exchange Products in the future if, because of an injunction requiring Equal Exchange to disclose lead or cadmium when present, she could be assured, by the absence of a disclosure, that the Products no longer contained unsafe levels of toxic metals, including lead or cadmium." (*Id.*) Her legal remedies—that is, damages—aren't an adequate remedy to address that concern.

After all, damages are "retrospective." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021). But an injunction of this kind "is prospective." *Id.* So, "[d]amages would compensate" Rodriguez for her "past purchases," but an "injunction would ensure that [she] can rely on [Equal Exchange's] representations in the future." *Id.* Thus, the CLRA's "retrospective damages are not an adequate remedy for that prospective harm." *Id.*; *see also Seale v. GSK Consumer Health, Inc.*, No. 2:23-cv-00842-AB-MRWx, 2024 WL 1040854, at *10 (C.D. Cal. Feb. 27, 2024) ("[D]amages for past harm are not always an adequate remedy for prospective harm caused by alleged false advertising[.]"); *Kryzhanovskiy v. Amazon.com Servs*., No. 2:21-cv-01292-DAD-BAM, 2022 WL 2345677, at *4 (E.D. Cal. June 29, 2022) ("While the Ninth Circuit's decision in *Sonner* bars equitable restitution for past harms that are otherwise subject to an adequate legal remedy, it does not bar the issuance of an injunction to prevent future harms."); *Adams v. Cole Haan, LLC*, No. 8:20-cv-00913-JWH-DFMx, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021) ("Monetary damages would not necessarily be sufficient to remedy this alleged harm insofar as Adams alleges that she would like to return to the Cole Haan outlet but is deterred from doing so by Cole Haan's alleged pricing scheme.").

In sum, Rodriguez's request for restitution under all three of these claims is dismissed without leave to amend, but without prejudice to being raised in state court. *See Guzman*, 49 F.4th at 1315 (requiring a "dismiss[al]" "without prejudice" to allow plaintiff "to raise [her] UCL claim in state court"). This means her unjust-enrichment claim, which does not have an injunction component, is dismissed in its entirety. The request to dismiss her injunctive-relief requests under the Unfair Competition Law or the False Advertising Law, however, is denied.

### 2. *False Advertising—Affirmative Misrepresentation*

That brings us to Equal Exchange's final argument: that Rodriguez hasn't stated a claim for false advertising because she lacks an "affirmative misrepresentation." (ECF 12, at 29.) Generally, a false-advertising claim "is not cognizable based solely on an omission of material information." *Drake v. Haier US Appliance Sols. Inc.*, No. 23-CV-00939-AMO, 2024 WL 590597, at *7 (N.D. Cal. Feb. 13, 2024); *see also* Cal. Bus. & Prof. Code § 17500 (requiring a "statement" be "untrue or misleading" before it's a false advertisement). But a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Consumer Advocs. v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 30 (Ct. App. 2003). Rodriguez again relies on Equal Exchange's statements that its products are "always small farmer grown" or use ingredients "sourced from small farmer organizations." (ECF 10, at 10.) But as mentioned above in the Proposition 65 discussion, it is not plausible that the words "sourced from small farmer organizations" or "always small farmer grown" are misrepresentations about toxin levels. For the same reason those allegations were not plausibly misleading in the Proposition 65 context, they fail here too. Without more, the False Advertising Law claim must be dismissed, albeit with leave to amend.

### CONCLUSION

Defendant's motion to dismiss is **GRANTED** in part:

1. Plaintiff's claims arising from a duty to warn about the risks of cancer or reproductive toxicity from lead or cadmium are **DISMISSED without leave to amend** and **with prejudice**.

2. Plaintiff's unfair-competition claim is **DISMISSED IN PART**. That is, this claim's restitution request is **DISMISSED without leave to amend**, but without prejudice.

3. Plaintiff's unjust-enrichment claim is **DISMISSED without leave to amend**, but without prejudice.

4. Plaintiff's false-advertising claim is **DISMISSED**. This claim's restitution request is **DISMISSED without leave to amend** and without prejudice, while the injunctive-relief request is **DISMISSED** *with* **leave to amend**.

The motion is otherwise **DENIED**. Should plaintiff decide to file a second amended complaint, she must do so by **April 19. 2024.**

Dated:  March 31, 2024

                                                Hon. Andrew G. Schopler
                                                United States District Judge